UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
                                     :
MIROGLIO S.P.A.,                     :
                                     :
                    Plaintiff,       :
                                     :     05 Civ. 00121 (BSJ)
          v.                         :
                                     :     **Order and Opinion**
                                     :
CONWAY STORES, INC., PARAMOUNT       :
DECORATORS, INC., YS DESIGNING OF NY :
INC., AND JEMBRO STORES, INC.,       :
                                     :
                    Defendants.      :
------------------------------------x

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

On January 7, 2005, Plaintiff Miroglio S.P.A. ("Miroglio" or "Plaintiff"), brought a copyright infringement action against three retailers, Conway Stores, Inc. ("Conway"), Paramount Decorators, Inc. ("Paramount"), and Jembro Stores, Inc. ("Jembro"), and one wholesaler, Paris Textiles, whose true corporate name is YS Designing of NY Inc. ("Paris" or "YS") (collectively, "Defendants"). Plaintiff alleged that Defendants sold curtains with virtually identical designs to its copyrighted designs, thereby infringing its copyright.

Plaintiff subsequently moved for summary judgment on its copyright claim, seeking to recover damages and attorneys' fees and to permanently enjoin Defendants from further infringing its copyright. Defendants filed opposition papers together with a cross-motion for summary judgment.

1

On February 6, 2007, Magistrate Judge Gorenstein issued a Report and Recommendation ("R & R") recommending that Miroglio's motion for summary judgment and damages be granted and that Defendants' cross-motion be denied. Judge Gorenstein also recommended that Miroglio's requests for a permanent injunction and for attorneys' fees be denied. Specifically, Judge Gorenstein found that the two design patterns at issue were "nearly identical" and that "[n]o reasonable jury could fail to find that the . . . curtains [sold by defendants] [we]re 'strikingly similar' to Miroglio's design." R & R at 10. Judge Gorenstein therefore concluded that Defendants infringed Plaintiff's copyright as a matter of law. Id. In addition, Judge Gorenstein recommended that damages be awarded to Miroglio in the amounts equivalent to the gross revenues earned by each defendant from the sale of the curtains.

On February 16, 2007, Defendants submitted timely objections to the R & R pursuant to Rule 72 of the Federal Rules of Civil Procedure and the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(c). Defendants' objections pertained to the portions of the R & R related to the copyright certificate and the calculation of damages. On October 29, 2007, the Court discontinued the action against Conway and Paramount, with prejudice, pursuant to the parties' separate settlement agreement. Jembro and Paris, however, have not entered into a

settlement agreement with Miroglio. For the reasons that follow, the Court rejects Jembro's and Paris's objections and adopts the R & R in its entirety; thus, Plaintiff's motion for summary judgment is GRANTED.

## DISCUSSION[1]

Defendants challenge the findings of the R & R on two grounds. First, Defendants argue that a genuine issue of material fact exists with respect to the copyright certificate and the underlying design. Defendants assert that Judge Gorenstein's determination that the design at issue was a derivative work of an original design, rather than merely the original design applied to a different fabric base, was in error. Second, Defendants argue that Judge Gorenstein incorrectly calculated damages by excluding deductible costs and expenses, including the cost of the curtains to retailer Jembro.

### A. Standard of Review

This Court reviews de novo those portions of a Magistrate Judge's report and recommendation to which defendants object. 28 U.S.C. § 636(b)(1)(C). Those portions of a report and recommendation to which a party has not specifically objected will be adopted by the Court as long as those sections are not

---

[1] Additional background information has been laid out in the R & R. Defendants have not disputed the background of the case as set forth in the R & R.

clearly erroneous. See Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 149 (1985); Greene v. WCI Holdings Corp., et al., 956 F. Supp. 509, 513 (S.D.N.Y. 1997).

**B. Summary Judgment Standard**

A court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party does so successfully, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). The party opposing summary judgment cannot rely on "conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jang Gan v. City of New York, 996 F.2d 522, 535 (2d Cir. 1993). Nonetheless, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-movant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**C. Registration of a Valid Copyright**

To establish a claim of copyright infringement, a party must show (1) valid copyright ownership and (2) copying of

original elements of the copyrighted work. See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co. Inc., 499 U.S. 340, 361 (1991).

A certificate of registration from the United States Copyright Office "constitute[s] prima facie evidence of the validity of the copyright . . . ." 17 U.S.C. § 410(c); Whimsicality, Inc. v. Rubie's Costume Co. Inc., 891 F.2d 452, 455 (2d Cir. 1989) ("[p]ossession of a registration certificate creates a rebuttable presumption that the work in question is copyrightable"). The certificate must be timely obtained "before or within five years after first publication" of the work. 17 U.S.C. § 410(c). If not obtained within five years, "the evidentiary weight to be accorded to the certificate of a registration . . . shall be within the discretion of the court." Id.

### 1. Miroglio's Copyright Certificate[2]

The following facts are undisputed unless otherwise noted.

#### a. **Miroglio Design 98284**

This action involves a design known as "Design 98284." See Declaration [of Vincenzo Graziola] in Support of Plaintiff's Motion for Summary Judgment, filed Apr. 5, 2006 ("Graziola Decl."), ¶ 3 (attached to Plaintiff's Notice of Motion for Summary Judgment ("Pl. Not. of Mot."), filed Apr. 5, 2006). The design combines floral and geometric patterns. See Design

---

[2] The following description of the facts is taken directly from the R & R at 2-4.

Sample, Ex. B of Pl. Not. of Mot. Miroglio acquired Design 98284 on January 31, 1994 from Studio Union Design, of Como, Italy, which had named it "Design No. DA15N." Graziola Decl. ¶ 4. Among the rights transferred to Miroglio was the copyright to the design. See Transfer of Copyright, dated May 10, 2004 (reproduced in Italian as Ex. C of Pl. Not. of Mot.); Graziola Decl. ¶ 4 (English translation of Transfer of Copyright). The transfer also included the "right to use, publish, sell and cede the design and any contingent rights connected to the above-mentioned design, worldwide." Graziola Decl. ¶ 4 (English translation of Transfer of Copyright).

Subsequently, Burlington Industries, Inc. ("Burlington") — presumably at Miroglio's direction — created a derivative work from Design 98284. See Certificate of Copyright Registration, No. VA 1-122-321, dated Mar. 11, 2002 (reproduced as Ex. D of Pl. Not. of Mot.), § 2(b). The derivative work is a fabric-based version of Miroglio Design 98284. Graziola Decl. ¶ 5. Burlington began selling the design on fabric in 1999. Id. In 2002, Burlington registered a copyright to this derivative work, which it called "Normandy 28653." See generally Certificate of Copyright Registration. The certificate of copyright registration characterizes the design as "2-dimensional artwork." Id. § 2(b). The design is identified as a

"derivative work or compilation." Id. § 6(a)-(b). The "preexisting material" on which it is based is called "Jacquard base 27503." Id. § 6(a). In the section that identifies the "Material Added To This Work," the certificate states: "Miroglio Tech Design 98284 . . . original new design laid over a jacquard base." Id. § 6(b).

Approximately a year after the registration, on July 15, 2003, Burlington assigned Normandy 28653 to Miroglio. See Graziola Decl. ¶ 6; Copyright Assignment and License Agreement (annexed as Ex. E of Pl. Not. of Mot.). This transfer included the right to "all proceeds to infringement suits, the right to sue for past, present and future infringements, and all rights corresponding thereto throughout the world . . . ." Copyright Assignment and License Agreement ¶ 6.

**b. The Regina Curtains**

In 2004, Miroglio bought drapes or shower curtains containing the Miroglio Design 98284 from three retailers: Conway, Jembro, and Paramount. See Graziola Decl. ¶¶ 12-14; see also Paramount Receipt, dated Sept. 2, 2004 (reproduced as Ex. H of Pl. Not. of Mot.); Conway Receipt, dated July 27, 2004 (reproduced as Ex. I of Pl. Not. of Mot.). Paris had sold these items to the retailers under the style name "Regina," and by

style numbers P200, P201, SH200, SH20 I, and SC200.³  See
Declaration of Jeffrey S. Dweck, filed June 23, 2006 ("Dweck
Decl."), ¶ 25.  Paris admits that it sold 48,060 Regina curtains
in all.⁴  Id. ¶ 26.  With respect to the retailers who are
defendants in this case, Paris maintains that it sold
approximately 1,282 Regina curtains to Paramount, 3,960 to
Jembro, and 4,656 to Conway.  Id. ¶¶ 29-31.  Paris states that
it procured the curtains from China, but does not know which
factory produced them.  See Deposition of Shlomo Fakse, dated
Feb. 10, 2006 (reproduced as Ex. K of Pl. Not. of Mot.) ("Fakse
Dep. I"), at 43; Deposition of Shlomo Fakse, dated Feb. 10, 2006
(reproduced as Ex. R of Pl. Not. of Mot.) ("Fakse Dep. II"), at
88.

## 2. The R & R/Defendants' Objection

Defendants argue that Normandy 28653 does not represent an
original or derivative work, but is merely the Miroglio Design
98284 applied to a fabric base, and thus the two copyrighted
works are actually the same design — Miroglio Design 98284.
Because Miroglio Design 98284 was created and acquired in 1994,
and the copyright registration certificate for Normandy 28653

---

³ P200 and P201 are window curtains, SH200 and SH201 are sheer window curtains, and SC200 is a shower curtain.  See Dweck Decl. ¶ 25.
⁴ Although the R & R stated that Paris admitted to selling 48,264 Regina curtains and cited the Dweck Declaration, see R & R at 3, after reviewing the declaration, the Court finds that this number slightly overstates the total number of Regina curtains sold.  The actual number of curtains sold is of no consequence to the calculation of gross profits.

was not filed until 2002, Defendants claim that the certificate was not obtained within the five-year statutory period that affords the copyright holder a presumption of copyright validity.

As Judge Gorenstein stated, "[t]his contention is meritless." R & R at 7. While Defendants are correct that the <u>original</u> design was created and acquired by Miroglio in 1994, the copyright at issue here, Normandy 28653, was a <u>derivative</u> work that was not created until 1999. Defendants argue that Judge Gorenstein's view that Normandy 28653 is a derivative work is incorrect, as the only difference between the two designs is that the latter work incorporates a jacquard base. See Defendant's Notice of Objection to R & R, filed Feb. 16, 2007, at 4-5. Defendants appear to believe that Judge Gorenstein would not have called Normandy 28653 a derivative work if he had understood that the only difference between the two designs is the fabric base, but the R & R itself noted that this copyright "pertains to a derivative work consisting of Miroglio Design 98284 laid over a jacquard base." R & R at 7. The Copyright Act defines a "derivative work" as "a work based upon one or more preexisting works, such as [an] . . . art reproduction . . . or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a

whole, represent an original work of authorship, is a 'derivative work'". 17 U.S.C. § 101. Defendants fail to demonstrate why a design with a new fabric base does not constitute a derivative work of the original design, and we agree with Judge Gorenstein's conclusion that such a work is derivative. Because the derivative work was created in 1999, its 2002 registration certificate fell within the five-year period that affords Miroglio the presumption of copyright validity. Aside from their conclusory statements that the newer design is not a derivative work, Defendants have offered no evidence suggesting that Normandy 28653 is not a valid copyright; therefore, the presumption holds.

Further, even if the registration certificate was filed after the five-year statutory period, Plaintiff's claim is not barred; Plaintiff is merely not afforded the presumption of copyright validity. "The evidentiary weight to be accorded the certificate of registration made [after the five-year period] shall be within the discretion of the court." 17 U.S.C. § 410(c). Miroglio offered substantial evidence in the affidavits submitted by Vincenzo Graziola that it does in fact own the registered copyrights to both Miroglio Design 98284 and Normandy 28653. See Graziola Decl. ¶¶ 6-7; see also Reply Declaration [of Vincenzo Graziola] in Support of Plaintiff's Motion for Summary Judgment, filed July 17, 2006, ¶¶ 3-5. Defendants

10

failed to offer any evidence contesting the facts set forth in these affidavits, and have offered no objections to Judge Gorenstein's reliance on them in the R & R. Accordingly, the Court finds that the certificate of copyright registration, together with the additional facts presented by Plaintiff, provide sufficient evidence to conclude as a matter of law that Miroglio owns the registered copyright to Normandy 28653.

Defendants did not object to the R & R's finding that they committed acts of unauthorized copying. Thus, the Court will adopt Judge Gorenstein's recommendation with respect to this issue as long as it was not clearly erroneous. After examining the designs in question, the Court agrees with Judge Gorenstein's finding that the two design patterns at issue are "nearly identical" and that "[n]o reasonable jury could fail to find that the . . . curtains [sold by defendants] [we]re 'strikingly similar' to Miroglio's design." R & R at 10. Because Plaintiff owned the registered copyright and because the R & R's finding on actual copying was not clearly erroneous, the Court holds as a matter of law that Defendants infringed Plaintiff's copyright.

### D. Calculation of Damages

Under 17 U.S.C. § 504, a copyright owner may recover either actual damages suffered as a result of infringement as well as apportioned profits, see 17 U.S.C. § 504(b), or statutory

damages, see 17 U.S.C. § 504(c); see also Rogers v. Koons, 960 F.2d 301, 312 (2d Cir. 1992). In order to calculate the infringer's profits, the Copyright Act provides that "the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b); see also On Davis v. Gap, Inc., 246 F.3d 152, 160 (2d Cir. 2001) (for purposes of 17 U.S.C. § 504(b), gross revenues include only "gross revenues reasonably related to the infringement, not unrelated revenues").

### 1. Damage Award Recommendation and Defendants' Objection

The damages at issue in this case arise from the sale of infringing curtains by wholesaler Paris to retailer Jembro. Magistrate Judge Gorenstein recommended that Miroglio is entitled to the following damage awards: $223,214.84 from Paris and $36,332.40 from Jembro.[5] These figures were taken from Plaintiff's calculations, which were based on invoices supplied by Defendant Paris. Using Paris's invoices, Plaintiff calculated both Paris's and Jembro's gross revenue from the infringing curtains. See R & R at 12. Plaintiff was forced to extrapolate Jembro's gross revenue from Paris's invoices because

---

[5] Judge Gorenstein recommended, based on Plaintiff's calculations, the following damage awards for the two defendants who subsequently settled their claims with Miroglio: $23,952.00 from Conway and $16,640.36 from Paramount.

12

Jembro claimed to have no invoices and "'produced no documents reflecting their sales of the infringing items.'". Id. (quoting Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, filed Apr. 5, 2006, at 11). As Judge Gorenstein noted, Miroglio's approach to estimating Jembro's gross revenues from the invoices provided is consistent with Second Circuit law. See Louis Vuitton S.A. v. Spencer Handbags Corp., 765 F.2d 966, 973 (2d Cir. 1985) ("Where the defendants fail to produce evidence to refute plaintiff's evidence of defendants' sales of [infringing] products, the court must rely on less certain methods of proof."); see also Deering, Milliken & Co. v. Gilbert, 269 F.2d 191, 193 (2d Cir. 1959) ("where . . . the defendant controls the most satisfactory evidence of sales the plaintiff needs only establish a basis for a reasoned conclusion as to the extent of injury caused by the deliberate and wrongful infringement").

In any event, Defendants do not object to Plaintiff's calculations of gross revenues for either Paris or Jembro.[6] Instead, Defendants argue that Judge Gorenstein erred when he failed to subtract deductible expenses from the gross revenues of each defendant. Judge Gorenstein ruled that the evidence of

---

[6] Indeed, Defendants argue that if this Court adopts the R & R's calculation for Paris's gross revenues ($223,214.84), the retailer-defendants should be able to use this number as evidence of gross revenues in their individual claims against Paris as well. Such a claim would have to be decided in subsequent litigation.

such expenses offered by Defendants was inadmissible, because it came from the Dweck Declaration, a declaration by Defendants' attorney — an individual who lacks the personal knowledge required by Rule 56(e) of the Federal Rules of Civil Procedure — rather than from Defendants themselves. See R & R at 13; Fed. R. Civ. P. 56(e)(1) ("supporting or opposing affidavit must be made on personal knowledge"); see also Randell v. United States, 64 F.3d 101, 109 (2d Cir. 1995) (finding attorney's affidavit not purporting to be based on personal knowledge inadequate to defeat a motion for summary judgment). Judge Gorenstein ruled that the same lack of personal knowledge barred the admission of evidence of the same expenses in Defendants' interrogatory responses because "they too [we]re signed by the defendants' attorney and thus were not made by someone with personal knowledge of the expenses." R & R at 13. Because of this, Judge Gorenstein found it inappropriate to take expenses into account when assessing damages.

The Court agrees with Judge Gorenstein's finding that the Dweck Declaration was inadmissible because it failed to meet the personal knowledge requirement of Rule 56(e). With respect to the interrogatory responses, the Court agrees with Judge Gorenstein that these, too, should be barred as inadmissible for the purposes of offering evidence of expenses. As noted by Judge Gorenstein, Defendants did not argue that deductible

14

expenses should be subtracted from total damages in their memorandum of law, as required by Local Civil Rule 7.1, nor did they contest Plaintiff's itemization of damages "through the submission of counterstatements of fact that are supported by reference to admissible evidence as required by Local [Civil] Rule 56.1(d)." R & R at 13-14. Additionally, the Court finds that these interrogatory responses are inadmissible for another reason: while they were signed by Defendants' attorney, they were not sworn under oath, as required by Rule 33(b)(3) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must . . . be answered separately and fully in writing under oath."). Without verification under oath, these responses cannot be admitted as evidence of deductible expenses. See Cabales v. United States, 51 F.R.D. 498, 499 (S.D.N.Y. 1970), aff'd 447 F.2d 1358 (2d Cir. 1971) (finding that an unsigned, unverified writing purporting to be plaintiff's answer did not qualify as an answer under Rule 33). Therefore, the Court adopts Judge Gorenstein's recommendations concerning the calculation of gross revenues and the inadmissibility of the Dweck Declaration and interrogatory responses.

Judge Gorenstein noted that Plaintiff relied in part on the interrogatory answers submitted by Defendants' attorney in order to calculate gross revenues. See R & R at 13. Defendants argue

15

that such reliance on these interrogatory responses by Plaintiff, when ruled inadmissible for Defendants, is unfair. But, as Judge Gorenstein also observed, these responses, signed by Defendants' attorney, constitute an admission of a party opponent, and are thus admissible for the purpose of calculating Defendants' gross revenues. See Fed. R. Evid. 801(d)(2); see Purgess v. Sharrock, 33 F.3d 134, 144 (2d Cir. 1994) ("[s]tatements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney") (quoting United States v. McKeon, 738 F.2d 26 (2d Cir. 1984)). In any event, Plaintiff did not solely rely on the interrogatory responses; it also calculated gross revenues for Paris and Jembro from the invoices submitted by Paris. See R & R at 12.

Defendant Jembro additionally argues that even if the deductible expenses described above are excluded, this Court should at least deduct, from total damages owed by Jembro, the costs to Jembro (a retailer) of purchasing the curtains from Paris (the wholesale supplier). Jembro claims that these costs can be derived either from the Dweck Declaration and interrogatory responses, or from the invoices submitted by Paris. This argument is meritless. First, as noted above, the Dweck Declaration and interrogatory responses are inadmissible for the purposes of offering evidence of Defendants' expenses.

16

Second, the Copyright Act states that "the infringer is required to prove his or her deductible expenses." 17 U.S.C. § 504(b). Defendant Jembro itself did not prove such expenses, as it claimed to have no invoices and produced no documents reflecting its sales of the infringing curtains. See R & R at 12. Jembro is essentially asking the Court to rely on the submitted invoices of another defendant, Paris, as proof of its own expenses. Absent any admissible evidence submitted by Jembro itself, the Court finds that Paris's invoices by themselves do not offer adequate evidence of Jembro's expenses.

Without any admissible evidence of deductible expenses, this Court may only consider gross revenues in determining profits for damage purposes. Accordingly, the Court adopts the recommendation of the R & R that damages should be equivalent to Defendants' gross revenues, and holds that Miroglio is entitled to $223,214.84 from Paris and $36,332.40 from Jembro.

### E. Permanent Injunction and Attorneys' Fees

Because Miroglio did not object to the R & R's recommendation that its request for a permanent injunction should be denied, the Court will adopt this recommendation unless it was clearly erroneous. The Court agrees with Judge Gorenstein's conclusion that Plaintiff did not explain why such an injunction would be appropriate in this case, and therefore denies Plaintiff's request.

17

With respect to attorney's fees and costs, Plaintiff has neither briefed the issue nor provided any record of fees and costs to the Court. If Plaintiff desires to receive fees and costs, Plaintiff should submit an application for such payment to the Court within 14 days of this judgment. <u>See</u> Fed. R. Civ. P. 54(d)(2).

## **CONCLUSION**

Having reviewed the objected-to portions of the R & R de novo in light of the parties' arguments, this Court adopts Judge Gorenstein's well-reasoned R & R in its entirety. Accordingly, Plaintiff's motion for summary judgment is GRANTED.

SO ORDERED:

_____
**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Dated:   New York, New York
         October __, 2008