UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MIROGLIO S.P.A.,                                          :

        Plaintiff,              :        05 Civ. 121 (BSJ) (GWG)

  -v.-                                                      :        REPORT AND
                                                       RECOMMENDATION
CONWAY STORES, INC., PARAMOUNT         :
DECORATORS, INC., YS DESIGNING OF NY
INC. and JEMBRO STORES, INC.,                    :

        Defendants.          :
---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Miroglio S.P.A. ("Miroglio"), an Italian manufacturer and producer of home furnishings and apparel, brought this copyright infringement action against a wholesaler, YS Designing of NY Inc. ("YS"), and three retailers, Conway Stores, Inc. ("Conway"); Paramount Decorators, Inc. ("Paramount"); and Jembro Stores, Inc. ("Jembro"). The claims against Conway and Paramount were settled. See Stipulation and Order, filed Oct. 29, 2007 (Docket # 34). On October 15, 2008, the Court granted summary judgment against YS and Jembro. See Opinion and Order ("Order"), filed Oct. 15, 2008 (Docket # 35) (adopting Report and Recommendation ("Report"), filed Feb. 6, 2007 (Docket # 28)). Miroglio now moves for an award of costs and attorney's fees against YS and Jembro pursuant to 17 U.S.C. § 505.[1] Only

---

[1] See Notice of Motion, filed Nov. 5, 2008 (Docket # 40); Memorandum of Law in Support of Plaintiff's Motion for Attorney's Fees and Costs, filed Nov. 5, 2008 (Docket # 42); Declaration in Support of Plaintiff's Motion for Attorney's Fees and Costs, filed Nov. 5, 2008 (Docket # 41) ("Schlacter Decl."); Defendant Jembro Stores, Inc.'s Memorandum of Law in Opposition to Plaintiff's Motion for Attorney's Fees, filed Dec. 31, 2008 (Docket # 47) ("Def. Mem."); Declaration of Jeffrey S. Dweck, Esq., filed Dec. 31, 2008 (Docket # 46); Reply Memorandum of Law in Support of Plaintiff's Motion for Attorney's Fees and Costs, filed Jan. 23, 2009 (Docket # 48) ("Pl. Reply Mem.").

Jembro has opposed this motion. For the reasons stated below, Miroglio's motion for attorney's fees and costs should be granted.

I.  MIROGLIO IS ENTITLED TO ITS COSTS AND FEES UNDER 17 U.S.C. § 505

In an action under the Copyright Act, 17 U.S.C. §§ 101 et seq., "the court in its discretion may allow the recovery of full costs by or against any party . . . [and] may also award a reasonable attorney's fee to the prevailing party as part of the costs." Id. § 505. The Supreme Court has held that attorney's fees should not be granted to the prevailing party automatically, but "only as a matter of the court's discretion." Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994). "'There is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations [the Court has] identified.'" Id. (quoting Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)). These "considerations" include factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence . . . so long as such factors are faithful to the purposes of the Copyright Act." Id. at 534 n.19 (citation and internal quotation marks omitted).

The Second Circuit has held that "objective reasonableness is a factor that should be given substantial weight in determining whether an award of attorneys' fees is warranted," and that "[t]his emphasis on objective reasonableness is firmly rooted in Fogerty's admonition that any factor a court considers in deciding whether to award attorneys' fees must be faithful to the purposes of the Copyright Act." Matthew Bender & Co. v. West Publ'g Co., 240 F.3d 116, 122 (2d Cir. 2001) (citation and internal quotation marks omitted). "The mere fact that a defendant

has prevailed does not necessarily equate with an objectively unreasonable claim." Berry v. Deutsche Bank Trust Co. Am., 2009 WL 1110791, at *3 (S.D.N.Y. Apr. 6, 2009) (citation, quotation marks, and ellipsis omitted). Instead, consideration is given if the copyright claim is "clearly without merit or otherwise patently devoid of legal or factual basis." Chivalry Film Prods. v. NBC Universal Inc., 2007 WL 4190793, at *2 (S.D.N.Y. Nov. 27, 2007) (citation omitted).

Jembro does not address the factors listed in Fogerty other than to argue that its lack of wilfulness is sufficient to deny the award of attorney's fees. But its purported lack of wilfulness is not sufficient to make an award of attorney's fees inappropriate. While courts have noted that wilfulness is an important factor that will often justify an award of fees, see, e.g., Kepner-Tregoe, Inc. v. Vroom, 186 F.3d 283, 289 (2d Cir. 1999); Historical Research v. Cabral, 80 F.3d 377, 379 (9th Cir. 1996); Microsoft Corp. v. Black Cat Computer Wholesale, Inc., 269 F. Supp. 2d 118, 124 (W.D.N.Y. 2002), Jembro has not identified any case law suggesting that a finding of wilfulness is necessary to support such an award. To the contrary, courts have held that "[b]ad faith or wilfulness is not a prerequisite to an award of attorneys' fees." Mary Ellen Enters. v. Camex, Inc., 68 F.3d 1065, 1072 (8th Cir. 1995); see also Casella v. Morris, 820 F.2d 362, 366 (11th Cir. 1987) ("Section 505 does not condition an award of fees on the showing of a willful infringement or frivolous suit."); Microsoft Corp. v. Software Wholesale Club, Inc., 129 F. Supp. 2d 995, 1003 (S.D. Tex. 2000) ("A finding of willful infringement is not a prerequisite to an award of attorney fees under the Copyright Act."); Scanlon v. Kessler, 23 F. Supp. 2d 413, 416 (S.D.N.Y. 1998) ("the court's finding of lack of wilfulness . . . does not prevent plaintiff

3

from being awarded attorney's fees and costs").[2]

Inasmuch as Jembro has not discussed any of the Fogerty factors other than wilfulness, it has done nothing to controvert that the other factors would justify an award against it. While courts have declined to award fees where, in addition to a lack of wilfulness, the defendants acted in good faith in resisting the claim, see, e.g., New Line Cinema Corp. v. Russ Berrie & Co., 161 F. Supp. 2d 293, 304-05 (S.D.N.Y. 2001), the lack of objective reasonableness of the defendants' position on the merits of this copyright claim makes such case law inapplicable.

The defendants' defense to the infringement claims relied most heavily on their contention that the curtains in question were not substantially similar to the copyrighted design whereas, in fact, the designs were nearly identical. See Report at 10 n.3, 11; Order at 11. This was not a case in which the facts were "close" or the issues "novel" so as to make an award of attorney's fees inappropriate. Cf. Earth Flag Ltd. v. Alamo Flag Co., 154 F. Supp. 2d 663, 666 (S.D.N.Y. 2001) (citing Lotus Dev. Corp. v. Borland Int'l, Inc., 140 F.3d 70, 75 (1st Cir. 1998)). In addition, an award of attorney's fees will provide compensation to Miroglio, which was forced to pursue this lengthy litigation in the face of an obviously losing position on the part of

---

[2] The Second Circuit took the same position in In Design v. K-Mart Apparel Corp., 13 F.3d 559 (2d Cir. 1994), in which it held that "[w]illful infringement . . . is not a necessary requirement for an award of attorneys' fees to a prevailing plaintiff." Id. at 568. In Design followed the "dual standard" for awarding attorney's fees under the Copyright Act, in which "attorneys' fees are awarded to prevailing plaintiffs as a matter of course[, b]ut prevailing defendants are awarded attorneys' fees only where the plaintiff's suit was brought in bad faith or was a baseless or frivolous action," id. at 567. This standard was rejected by the Supreme Court in Fogerty. See 510 U.S. at 534 ("Prevailing plaintiffs and prevailing defendants are to be treated alike"). But there is nothing in Fogerty that negates the Second Circuit's conclusion that attorney's fees may be awarded to a prevailing plaintiff even in the absence of any finding that the defendant's infringement was wilful.

defendants. Notably, the defendants' unreasonable position is directly responsible for Miroglio having had to expend the very costs and fees it now seeks in this application. An award of fees will deter future infringers who will be put on notice that they may be called upon to compensate plaintiffs for the expenses that directly result from their requiring a plaintiff to file a lawsuit to enforce its rights.

II.  REASONABLENESS OF THE FEES REQUESTED

As the Second Circuit noted in Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182 (2d Cir. 2008), "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate." Id. at 186 (quoting Hensley, 461 U.S. at 433). This figure has commonly been referred to as the "lodestar" – a term that Arbor Hill eschews in favor of the term "presumptively reasonable fee." Id. at 183.

A.  Reasonable Hours

It is well-established that "any attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). The Court's task is to make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). The critical inquiry is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time

expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted), cert. denied, 506 U.S. 1053 (1993); accord Nike, Inc. v. Top Brand Co., 2006 WL 2946472, at *5 (S.D.N.Y. Feb. 27, 2006) (Report and Recommendation), adopted by 2006 WL 2884437 (S.D.N.Y. Oct. 6, 2006).

If a court finds that claimed hours are "excessive, redundant, or otherwise unnecessary," it should exclude those hours from its "lodestar" calculation. Hensley, 461 U.S. at 434; accord Quaratino v. Tiffany & Co., 166 F.3d 422, 426 n.6 (2d Cir. 1999); Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998); Luciano v. Olsten Corp., 109 F.3d 111, 116-17 (2d Cir. 1997); In re Stock Exchs. Options Trading Antitrust Litig., 2006 WL 3498590, at *11 (S.D.N.Y. Dec. 4, 2006). Additionally, in cases where the documentation of hours is "vague or incomplete," the court may also reduce the award. E.g., Rosso v. Pi Mgmt. Assocs., 2006 WL 1227671, at *2 (S.D.N.Y. May 3, 2006) (citing In re Painewebber Ltd. P'ships Litig., 2003 WL 21787410, at *4 (S.D.N.Y. Aug. 4, 2003)). However, the Supreme Court noted in Hensley that "[t]here is no precise rule or formula for making these determinations." 461 U.S. at 436. And, because "it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application," Carey, 711 F.2d at 1146, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application,'" Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (quoting Carey, 711 F.2d at 1146). Thus, a district court is not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items." Lunday, 42 F.3d at 134.

Here, Miroglio has submitted copies of contemporaneous time records, and seeks a total of 118 hours. See Ex. C to Schlacter Decl. The time sheets include several hours that were

6

spent solely on the two defendants who are no longer parties to this case, Conway and Paramount, and those hours must therefore be subtracted from the hours sought.  A total of 4.3 hours were spent on tasks relating to the amendment of the complaint to add Paramount as a defendant.  See id. at 5 (3/7/07: "Discussion with client; prepared Amended Complaint to add additional Paramount defendants"; 4/3/07: "Went to offices of Paramount to serve Amended Summons and Complaint - principals not present"; 4/5/07: "Successfully personally served the new Paramount defendants").  In addition, several time entries relate to settlement discussions with Conway and Paramount.  However, because many entries are vague, it is difficult to determine which entries reflect time spent solely on the settlement.  "[W]here an attorney's time entries are vague, courts may attempt to decipher them by reference to the context in which these entries occur to determine what work was involved."  Wise v. Kelly, 2008 WL 482399, at *13 (S.D.N.Y. Feb. 21, 2008) (citation, internal quotation marks, and bracketing omitted).  During the period between July 3, 2007 (when counsel had a "discussion with Dweck re settlement") and October 23, 2007 (when counsel wrote a "[l]etter to Judge Jones re settlement"), it is not clear what the parties would have had to discuss besides settlement, as the parties had already submitted their objections to the Report and Recommendation and were awaiting a ruling from Judge Jones.  The Court concludes that the letters and discussions with defendants' counsel during that period, which represent 3.8 hours of attorney labor, were likely related to the settlement with Conway and Paramount.  Thus, the award should be reduced by a total of 8.1 hours to reflect time devoted to defendants who are no longer parties to this case.

     In addition, there are numerous vague entries throughout the time records, such as "letter to Dweck," "telephone call to Dweck," and "discussion with Dweck."  Such entries are overly

vague. See, e.g., Spalluto v. Trump Int'l Hotel & Tower, 2008 WL 4525372, at *8 (S.D.N.Y. Oct. 2, 2008) (listing cases) ("cursory descriptions, such as . . . 'prepare correspondence to co-counsel,' . . . and 'prepare letter to court' are too vague"). While Miroglio asserts that Jembro cannot challenge these vague entries because Jembro's counsel knows these communications actually occurred, see Pl. Reply Mem. at 6, some specificity is required in time entries to enable the court to determine whether a reasonable amount of time was spent on each activity, and to determine whether the particular activity is compensable. Thus courts commonly make percentage reductions for such entries. See, e.g., Margel v. E.G.L. Gem Lab Ltd., 2009 WL 302069, at *6 (S.D.N.Y. Feb. 6, 2009) ("Where time entries are justified in principle but vague in detail, courts frequently employ a reduction of 20% in order to eliminate waste that may be hidden in the entries.") (citation omitted); Williamsburg Fair Hous. Comm. v. N.Y. City Hous. Auth., 2007 WL 486610, at *5 (S.D.N.Y. Feb. 14, 2007) (approximately 50% reduction); Aiello v. Town of Brookhaven, 2005 WL 1397202, at *3 (E.D.N.Y. June 13, 2005) (15% reduction).

The time records also contain some "block entries" – that is, billing a large number of hours for multiple tasks. See, e.g., Ex. C to Schlacter Decl. at 3 (4.0-hour time entry: "Finished document responses; discussion with client; letter to Dweck re depositions; letter to Dweck with discovery responses; Telephone discussions with Dweck; letter to Mag. Gorenstein"). Block entries of this kind "ha[ve] a tendency to obfuscate the amount of time expended on distinct tasks and introduces an element of vagueness into a fee application, making it difficult to determine if the reported hours are 'duplicative or unnecessary.'" Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG, 2005 WL 3099592, at *5 (S.D.N.Y. Nov. 17, 2005) (citations omitted); accord Berry, 2009 WL 1110791,

at *5 ("Courts can reduce awards for block billing because commingling of activities within one time entry impedes the court's efforts to evaluate the reasonableness of any of the listed activities.") (citation and internal quotation marks omitted).  Reductions are appropriate based on such entries as well.  See, e.g., Molefi v. Oppenheimer Trust, 2007 WL 538547, at *7-8 (E.D.N.Y. Feb. 15, 2007) (15% reduction); Klimbach v. Spherion Corp., 467 F. Supp. 2d 323, 332 (W.D.N.Y. 2006) (10% reduction).

Because the time records here contain some vague entries and block entries that prevent the Court from determining whether the time expended was reasonable, and because the time records also reflect time spent on clerical tasks, such as faxing documents, preparing duplicates, serving papers on defendants, and filing documents, the Court will "deduct a reasonable percentage of the number of hours claimed" – in this case 15% – "'as a practical means of trimming fat from a fee application.'"  Kirsch, 148 F.3d at 173 (citation omitted).  The Court has used a percentage reduction on the low end of the scale because the overall number of hours sought are reasonable to begin with.

Jembro also argues that Miroglio is not entitled to recover its fees for the hours spent preparing the application for costs and fees.  The Second Circuit has interpreted a nearly identically-worded statute, 42 U.S.C. § 1988, as including such fees within its purview.  Weyant v. Okst, 198 F.3d 311, 316 (2d Cir. 1999).  There is nothing in 17 U.S.C. § 505 or the case law interpreting it to suggest that any other rule should apply and, indeed, courts have awarded such fees in copyright cases.  See, e.g., J.S. Nicol, Inc. v. Peking Handicraft, Inc., 2008 WL 4613752, at *12 (S.D.N.Y. Oct. 17, 2008).

In sum, 8.1 hours should be subtracted from Miroglio's claimed 118 hours to reflect time

spent on defendants who are no longer parties to the case. In addition, the remaining hours should be reduced by 15% to correct for vague entries, block entries, and time expended on clerical tasks. Thus, Miroglio is entitled to an award of fees for 93.4 hours of its attorney's work.

      B.      <u>Reasonable Hourly Rate</u>

Arbor Hill made clear that a "reasonable" hourly rate is "what a reasonable, paying client would be willing to pay." 522 F.3d at 184. Thus, "the district court (unfortunately) bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay <u>the least amount necessary to litigate the case effectively</u>." <u>Id.</u> (emphasis added). In addition, the rate to be set for the plaintiff's attorneys must be "'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" <u>Reiter v. MTA N.Y. City Transit Auth.</u>, 457 F.3d 224, 232 (2d Cir. 2006) (quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 896 n.11 (1984)) (insertion in original), <u>cert. denied</u>, 549 U.S. 1211 (2007).

To determine an appropriate hourly rate, <u>Arbor Hill</u> directs that a court should engage in the following process:

> the district court, in exercising its considerable discretion, [is] to bear in mind <u>all</u> of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the <u>Johnson</u> factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

522 F.3d at 190 (emphasis in original).  The "Johnson factors" are those laid out in the case of Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).  These factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Arbor Hill, 522 F.3d at 186 n.3 (citing Johnson, 488 F.2d at 717-19).  Arbor Hill specifically identified the following factors to be considered in determining what a reasonable, paying client would be willing to pay:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have had an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

Id. at 184.

The fee applicant bears the burden of establishing the reasonableness of the hourly rates requested – in particular, by producing satisfactory evidence that the requested rates are in line with those prevailing in the community.  Blum, 465 U.S. at 895 n.11; 601 W. Assocs. LLC v. Kleiser-Walczak Constr. Co., 2004 WL 1117901, at *3-4 (S.D.N.Y. May 18, 2004).

In considering the appropriate rate, this Court has also relied on its own knowledge of the rates charged by practitioners.  See generally McDonald ex rel. Prendergast v. Pension Plan of

the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96-97 (2d Cir. 2006) ("A district court may also use its knowledge of the relevant market when determining the reasonable hourly rate.") (citing Miele v. N.Y. State Teamsters Conference Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987)); Farbotko v. Clinton County, 433 F.3d 204, 209 (2d Cir. 2005) (court may consider its "own familiarity with the rates prevailing in the district"). This knowledge derives largely as a result of the Court's participation in settlement conferences, in which the Court in its private discussions often asks attorneys to reveal their hourly rates.

Miroglio's attorney seeks a rate of $285 per hour. In support of this rate, Miroglio has provided evidence that its attorney's customary billing rate for the relevant period ranged from $285 to $300 per hour, and that the billing agreement with Miroglio specified that the rate would be $285. See Schlacter Decl. ¶¶ 4, 14. Miroglio's attorney also attested to his experience with copyright litigation. Id. ¶¶ 14. Jembro does not object to the rate requested and it appears to be reasonable. Thus, Miroglio is entitled to an award of 93.4 hours at $285 per hour, for a total of $26,619.00.

Arriving at this total "does not end the inquiry," however. Hensley, 461 U.S. at 434. There are other considerations that may lead a court to adjust the fee upward or downward. Id. The lodestar figure may be adjusted on the basis of the "results obtained." Id. "Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Farrar v. Hobby, 506 U.S. 103, 114 (1992) (quoting Hensley, 461 U.S. at 436). Thus, where a party prevails, but obtains far lesser relief than might have been expected, case law reflects that a court consider an adjustment in the lodestar amount. See, e.g., Parrish v. Sollecito, 280 F. Supp. 2d 145, 173 (S.D.N.Y. 2003). Here, the results achieved were excellent

12

and there is no basis for a reduction.

  C. <u>Costs</u>

  Miroglio seeks costs of $1,337.60 for court filing fees, deposition transcripts, and service of process.  <u>See</u> Schlachter Decl. ¶ 13.  The costs of filing fees and deposition transcripts are specifically permitted by statute, <u>see</u> 28 U.S.C. § 1920(1), (2), and the Second Circuit has held that the costs of service of process may be taxable "to the extent that they do not exceed the costs that would have been incurred had the Marshal's office effected service," <u>U.S. ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.</u>, 95 F.3d 153, 172 (2d Cir. 1996).  Defendants have submitted no specific objection to these costs and thus Miroglio should recover its costs of $1,337.60.

<u>Summary</u>

Plaintiff's attorney's fee and costs application should be granted as follows:

```
Attorney's fees      $ 26,619.00
Costs                $  1,337.60
TOTAL                $ 27,956.60
```

III. <u>JOINT AND SEVERAL LIABILITY</u>

  Jembro next argues that if attorney's fees are awarded, they should be apportioned between the defendants, and Jembro should not be subjected to joint and several liability.  <u>See</u> Def. Mem. at 2-4.

  While some courts have justified joint and several liability for attorney's fees based on a finding of wilfulness, <u>see</u>, <u>e.g.</u>, <u>Childress v. Taylor</u>, 835 F. Supp. 739, 743 (S.D.N.Y. 1993), at least one case has held defendants jointly and severally liable for attorney's fees even where their infringement was not wilful, <u>see</u> <u>Stevens v. Aeonian Press, Inc.</u>, 2002 WL 31387224, at *4

n.2, *8 (S.D.N.Y. Oct. 23, 2002) (while the court made no finding as to one defendant's knowledge of the infringement, it was appropriate to hold that defendant jointly and severally liable for attorney's fees where the defendant "was a participant in Defendants' objectively unreasonable litigation position"). The Second Circuit has squarely held that it is within the trial court's discretion to determine whether the defendants will be jointly and severally liable for attorney's fees. See Getty Petroleum Corp. v. Bartco Petroleum Corp., 858 F.2d 103, 114 (2d Cir. 1988), cert. denied, 490 U.S. 1006 (1989).

Jembro argues that liability for costs and fees should not be joint and several because the judgment previously awarded to Miroglio was not joint and several. See Def. Mem. at 3. But the reason for this was that the judgment calculated damages based on defendants' profits from the infringement, see Order at 12-13, and such damages are not normally subject to joint and several liability, even where defendants were joint tortfeasors, see, e.g., Abeshouse v. Ultragraphics, Inc., 754 F.2d 467, 472 (2d Cir. 1985); U.S. Media Corp. v. Edde Entm't Corp., 1998 WL 401532, at *8 (S.D.N.Y. July 17, 1998).

Nonetheless, the Court recognizes its discretion in this area, and believes that Jembro's apparent lack of wilfulness militates against requiring it to be responsible for the full measure of fees. In United States Media Corp. v. Edde Entertainment, Inc., 1999 WL 498216 (S.D.N.Y. July 14, 1999), retailers who had not been found to be wilful infringers were liable for only 25 percent of the attorney's fees. Id. at *11; see also Dumas v. Dagl, 1990 WL 258343, at *6 (S.D.N.Y. May 22, 1990) (apportioning attorney's fees based on the defendants' "differing involvements in the events at issue").

Miroglio argues against apportionment on the ground that there are indications that YS is

14

no longer in business, and thus that Miroglio may not be able to recover damages against YS. See Pl. Reply Mem. at 6.  While these circumstances do favor Miroglio, the Court deems them insufficient to require Jembro to bear the full brunt of the litigation costs.

Accordingly, the Court finds that it would not further the purposes of the Copyright Act to require Jembro alone to bear the entire cost of plaintiff's lawsuit against a number of defendants.  Rather, it would disproportionately punish one retailer for an infringement that involved a manufacturer and multiple other retailers.  Here there were four defendants for the vast bulk of the litigation period.  Miroglio was able to seek compensation for its attorney's fees when it settled with the other two retailers after the litigation was almost concluded.

Having considered all the relevant factors, the Court concludes that Jembro should be liable (jointly and severally with YS) for 33-1/3% of the plaintiff's costs and fees.  YS alone should be liable for the remaining 66-2/3% of the costs and fees.  .

IV.     CONCLUSION

For the foregoing reasons, the motion for attorney's fees (Docket # 40) should be granted.  Miroglio should be awarded judgment for $18,637.73 in attorney's fees and costs against YS.  Miroglio should be awarded judgment for $9,318.87 in attorney's fees and costs against Jembro and YS jointly and severally.

**PROCEDURE FOR FILING OBJECTIONS TO THIS
REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Barbara S. Jones, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Jones. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).

Dated: May 27, 2009
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　GABRIEL W. GORENSTEIN
　　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Barbara S. Jones, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Jones. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).

Dated: May 27, 2009
    New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge